## MYRICK *vs.* SELDEN and others.

In proceedings supplementary to execution, the court does not appoint more than one person receiver of the property of the judgment debtor, however numerous may be the creditor's bills or supplementary proceedings against him; inasmuch as such appointment in one suit or proceeding completely divests the debtor of his title to all his property.

An action will not lie by one judgment creditor, against another, for the purpose of determining the question as to the priority of their respective liens upon the equitable property of the judgment debtor in the hands of the receiver.

The commencement of a suit in equity, by the service of a summons and injunction, creates a lis pendens and a lien in the nature of an attachment or a statute execution, upon the equitable property of the defendant. But the plaintiff is bound to prosecute his action diligently, to retain his lien; or it will cease, like that of a dormant execution.

A delay of eight years, by the plaintiff, in the prosecution of his suit, will be deemed an abandonment or waiver of his prior right acquired by the commencement of the suit, as against a subsequent creditor who has, in the meantime, by his vigilance, discovered and reached a fund sufficient to satisfy his claim.

APPEAL from an order made at a special term, sustaining a demurrer to the supplemental complaint.

On the 5th of July, 1851, Albert G. Myrick and Josiah W. Myrick (the latter now deceased) recovered a judgment against Ansel Frost and Harmon Hibbard, for $5936.09, and execution thereon was returned wholly unsatisfied, September 21, 1851. In August, 1851, Albert G. Myrick caused a writ of *ne exeat* to be issued against Frost, to the sheriff

of Monroe, where Frost resided ; but Frost eluded the sheriff, and fled from the state to New England. In December, 1851, the original suit (to which this suit is supplemental) was commenced by Myrick against Frost and Samuel Rand ; the latter appeared and caused his answer to be served on the 12th of January, 1852. Many efforts were made by the plaintiff's attorneys to serve the summons upon Frost ; but a short time before it was issued he absconded from the state to avoid such service, which was not finally effected until September 12, 1852. The complaint was the ordinary creditor's bill, as against Frost, and charging Rand with holding a large amount of property belonging to Frost, in trust for him, and to defraud his creditors ; and praying that his (Rand's) claim be declared fraudulent, and the plaintiff's judgment paid out of the property. Also for a receiver and an injunction. Frost answered, not denying the fraudulent transfer to Rand, nor that Rand held the property, as charged in the complaint ; but he denied the facts charged as to his absconding, and as to the issuing of execution against him. Frost also set out a large number of judgments recovered against him, from August 10, 1842, to November 26, 1846, docketed in Onondaga and Monroe counties, and executions issued and returned thereon unsatisfied ; and alleged that Henry R. Selden was the owner of one of said judgments, as surviving plaintiff, and of the others, as assignee. That on the 17th of July, 1852, after the return of all the executions unsatisfied, application was made to the Hon. Daniel Pratt, a justice of this court, upon affidavits, for an order requiring Frost to appear and answer concerning his property, which was granted, requiring him to appear 19th July. The order was duly served, and on the 19th July Frost appeared, and the matter was referred to B. Davis Noxon, jun., and Frost ordered to appear and answer before him. The referee was ordered to examine Frost and all witnesses, &c. Such proceedings were thereupon had, that on the same day (19th July) Nathan F. Graves was appointed by said justice

receiver of the property and effects of Frost, with the usual powers of receivers in such cases. On the 5th of August the receiver gave the required bail, and on the 6th of August Frost assigned to the receiver all his estate, equitable interests and things in action. Rand in his answer denied the alleged fraud, and all collusion with Frost, and claimed the property as his own. The plaintiff alleges that the proceedings supplementary to execution were had, and Graves appointed receiver, as stated in the answer of Frost; that shortly thereafter, Graves, as such receiver, and the said Henry R. Selden, commenced a suit in this court against Frost and Rand, to obtain the interest of Frost in the property held by Rand. Issue was joined, and the cause referred to Francis Kernan, Esq. to hear and determine, who, after hearing the proofs and allegations of the parties, decided that the claim of Rand was fraudulent, and that he was liable to account for all the property received by him, and to pay over and apply the proceeds to the satisfaction of the judgments mentioned in the proceedings. That an accounting has been had, " and very much testimony has been taken before said referee, and the counsel upon both sides have been heard, but the said referee has not made a final report ;" but has proceeded so far as to ascertain that said Rand has as much as ten thousand dollars in his hands, &c. That the cause of action, upon which the plaintiff's judgment was recovered, accrued prior to the transactions between Frost and Rand, and that those transactions were fraudulent as against him ; that the original action against Frost and Rand was commenced before the issuing and return of the executions mentioned in the answer of Frost, and prior to the appointment of Graves as receiver, and prior to the assignment of the judgments to Selden ; and the plaintiff believes that said Graves and Selden had notice of the commencement of his original action, and the proceedings therein, before the commencement of their action. Prayer, that it be declared that he has priority of lien, and is entitled to priority of payment, out of

the effects of Frost. General demurrer, by the defendant Selden, at special term.

The following opinion was delivered by the judge on deciding the cause upon the demurrer, at the special term.

JOHNSON, J. " The supplemental complaint shows upon its face that the action was not commenced against the defendant Frost, until after the defendant Selden had regularly instituted and gone through with proceedings supplementary to execution, which resulted in the appointment of a receiver, and the assignment by Frost to such receiver of all his effects for the satisfaction of the judgments, in respect to which such proceedings had been instituted.

It is clear, I think, that the service of the summons upon the defendant Rand was no commencement of the action as against Frost, as they were, in no sense, either joint contractors, or united in interest, as against Frost. Rand, according to the allegations in the complaint, had a complete and perfect title to the property transferred to him, so that their interests, as respects the subject of the action, were entirely distinct and separate, if not entirely hostile.

Under the code, the attempt to commence the action is not equivalent to its actual commencement, even for the purpose of saving the demand from the operation of the statute of limitations, unless it is followed by the first publication of the summons, or by the service thereof, within sixty days. (*Code,* § 99.)

It is contended in behalf of the plaintiff, that by the commencement of the action against Rand, who had Frost's title, he acquired a lien upon the property, over which no other creditor could obtain a preference by a subsequent action or proceedings against Frost, or against Frost and Rand. I am inclined to the opinion that by that proceeding the plaintiff did acquire a lien, which would be effectual as against Rand and all persons claiming under or through a title derived from him. Rand had Frost's title, as against him, and all

the world besides, except Frost's creditors. But as to the creditors of the latter, he had no right or title whatever ; as against them the conveyance was fraudulent and void, and carried with it no right or title, but it remained in Frost, as it was before. It was the title of Frost, which he had not parted with, as regarded his creditors, and not the title of Rand, which all the parties owning the judgments were endeavoring to reach. The receiver's title came from Frost by a complete and direct conveyance, in pursuance of judicial proceedings and sentence ; and, it seems to me, gave to such receiver and to the defendant Selden a lien or title, superior in every respect to any which the plaintiff did or could acquire, by the mere commencement of his action against Rand.

Indeed, I do not see how the plaintiff acquired any lien of any description upon Frost's property, as such, until the commencement of the action against him. Before the code, it was necessary, in order to create a *lis pendens*, to serve the subpœna upon the defendant in the *judgment.* (*Hayden* v. *Bucklin,* 9 *Paige,* 512.) The chancellor in that case intimates that a commencement by taking out a subpœna and making a *bona fide* attempt to serve it without delay, which would be a good commencement of the action for the purpose of saving the operation of the statute of limitations, if the action was prosecuted with due diligence, afterwards, would probably be a commencement sufficient to give the complainant in a creditor's bill a preference over a similar action subsequently commenced against the same defendant, in which the subpœna should be first served.

It is to be observed, however, that the law in reference to the commencement of actions is now changed, and that this action was not commenced against Frost for any purpose whatever, until after Frost had parted with his title. As I shall put my decision entirely on this ground, I shall not notice the other points discussed.

The complaint shows a good cause of action, on its face,

Myrick *v.* Selden.

against the defendants Frost and Rand, but none against the defendant Selden, who is entitled to judgment on his demurrer."

Judgment accordingly, and the plaintiff appealed.

*T. R. Strong,* for the appellant.

*H. R. Selden,* defendant, in person.

By the Court, E. DARWIN SMITH, J. The demurrer in this case, I think, was rightly disposed of at the special term. The supplemental complaint set up no right of action, as against the defendants Selden and Graves. The plaintiff and Selden are both judgment creditors of the defendant Frost, and are both pursuing their lawful remedies for the collection of their respective judgments from the equitable property of their common judgment debtor. The property of Frost, which both creditors are seeking to reach, is vested in the receiver Graves, and can only be appropriated by him under the order of this court. The receiver, it is true, was appointed upon the application of Selden in the proceedings instituted by him supplemental to execution, but he is as much an officer of the court under such appointment, and under its control, as though he had been appointed in an action, and the plaintiff, upon proper application, is entitled to have the defendant Graves appointed receiver in his suit also. The court does not, in such cases, appoint more than one person receiver of the property of a judgment debtor, however many creditors' bills or proceedings supplementary to execution are instituted against him, as such appointment in one suit or proceeding completely divests the judgment debtor of his title to all his property. The question of priority of lien upon the equitable property of the judgment debtor in the hands of a receiver, which is the only question presented upon this supplemental bill, is not properly, I think, the subject of an action. It can be, and usually is,

Myrick *v.* Selden.

presented and disposed of summarily by the court. (*Boynton* v. *Rawsen*, 1 *Clarke*, 584.) I can see no necessity or occasion for presenting and litigating this question by action, and I should be disposed to sustain this demurrer upon this sole ground. The defendant Selden has done nothing to interfere with or infringe upon the just rights of the plaintiff—nothing to warrant subjecting him as a party to the plaintiff's suit against Frost and Rand. He has simply asserted his own legal rights, and by superior diligence has obtained the prior appointment of a receiver, in his proceedings. The plaintiff has no ground of complaint on this account, nor any other that I can see, against Selden; and the defendant Graves is merely the receiver. The prior appointment of a receiver does no necessary wrong to the plaintiff. Of itself it settles nothing. It merely preserves and secures the property of Frost for his creditors. But if it were necessary, in disposing of this demurrer, to decide the question which of these parties, the plaintiff or the defendant Selden, had the prior lien upon the property in the hands of the receiver, I should certainly, after the great delay of the plaintiff in prosecuting his action, hesitate long before I concurred in a decision which should deprive the defendant Selden of the benefit of his superior diligence, and give to the plaintiff the fruits of his long and serious litigation to reach the equitable property and assets of Frost, even though I were satisfied that the suit of the plaintiff should be deemed first commenced and a *lis pendens* in respect to such property thereby created. The action was commenced against Rand in December, 1851, and as against Frost, September 12th, 1852. The order upon supplemental proceedings instituted by Selden was made July 17th, 1852; and the order appointing a receiver was made July 19th. On the 6th of August, 1852, the receiver qualified, and on the same day Frost made an assignment to him of his legal and equitable property and interests. Since the defendant Frost put in his answer in this action, on the 4th of October, 1852, it does not appear

that any proceedings have been had in said suit, till the service of the supplemental complaint making Selden and Graves parties, which was verified July 25th, 1860. Here was an interval of nearly eight years, in which no proceedings were had in the action. In the meantime Selden had diligently prosecuted his suit and proceedings, and had discovered and reached a fund sufficient, probably, to pay his judgments. It would be the height of injustice, now, to let the plaintiff step in and reap the fruit of this litigation, and I am satisfied he has no such right. The commencement of a suit in equity by the service of a summons and injunction upon Frost doubtless created a *lis pendens* and a lien in the nature of an attachment, (*Corning et al.* v. *White,* 2 *Paige,* 567,) or a statute execution upon his equitable property. (*Weed* v. *Pierce,* 9 *Cowen,* 729. *Beck* v. *Burdet,* 1 *Paige,* 309. 4 *id.* 42. 5 *id.* 13. 6 *id.* 445.) But the plaintiff was bound to prosecute his action diligently, to retain his lien, or it would cease, like that of a dormant execution. Chancellor Walworth, in *Edmeston* v. *Lyde,* (1 *Paige's Ch.* 637,) says of the creditor in such a case, " if he abandons the pursuit, or lingers by the way, before he has obtained a specific lien, he has no right to complain if another creditor obtains a preference by superior vigilance." The delay of nearly eight years by the plaintiff, in the prosecution of his suit, it seems to me, should be deemed an abandonment or waiver of his prior right, if he had acquired any such right, by the commencement of his suit, as against the defendant Selden. But upon the point whether the plaintiff's suit was first commenced, if it be necessary to decide it now, I concur in the opinion of the judge at special term, that as against the defendant Frost, and so far as a *lis pendens* is concerned, to create any lien upon his equitable property, this suit was not commenced until the service of the subpœna and injunction upon Frost, in September, 1852. He and Rand were not united in interest in any just sense, within the intent and meaning of section 99 of the code. This section declares that an action shall be

commenced as to such defendant when the summons is served on him, or on a co-defendant who is a joint contractor, or is otherwise united in interest with him. Frost and Rand were not joint contractors, and were in no way united in interest. Rand is a fraudulent grantee of Frost, but he denied his fraud and claimed to be the absolute owner of the property in hostility to Frost and his creditors. I can see no ground on which the complaint can be sustained, and think that the order sustaining the demurrer thereto by the defendants Selden and Graves should be affirmed with costs.

[MONROE GENERAL TERM, September 2, 1861. *Smith, Johnson* and *Knox,* Justices.]